UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO
CIVIL ACTION NO. 4:16CV-P43-JHM

LESLIE HAUN                                                                                           PLAINTIFF

v.

JAMES ERWIN *et al*.                                                                    DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the motion for summary judgment filed by Defendants James Erwin, David Higgs, Michael Robinson, Joseph Meko, and Alex Ford (DN 49). Proceeding *pro se*, Plaintiff filed a response to the motion (DN 50); Defendants filed a reply (DN 51). For the reasons that follow, the motion for summary judgment will be granted.

**I**.

Plaintiff sued the following Defendants: Erwin, the Deputy Commissioner of the Kentucky Department of Corrections (KDOC); Higgs, the Deputy Warden at the Green River Correctional Complex (GRCC); Robinson, the Unit Administrator at GRCC; Meko, the Warden of the Little Sandy Correctional Complex (LSCC); and Ford, identified by Plaintiff as the "C&T" Supervisor at LSCC. He sued Defendants in both their official and individual capacities.

In the complaint, Plaintiff alleged that the KDOC and its employees "practiced standards of retaliation" against inmates for using the grievance process. He stated, "This well known retaliation includes but is not limited to transfer to less desirable institutions . . . ." Plaintiff maintained, "Fear of retaliation and/or reprisals prevent thousands of the incarcerated inmates from seeking relief by using the adopted grievance system let alone trying to access the courts for redress the conditions of confinement."

Plaintiff stated, "After exhausting all internal remedies and finally filing for a Declaratory Judgment in Franklin County Circuit Court in which the D.O.C. and Correct Care Solutions . . . employees refused to follow their own policies, even falsifying/forgering documents," he was told by Defendant Robinson "'we're shipping your ass to an open dorm and your job is over.'" According to the complaint and attachments, Plaintiff was transferred from GRCC to Northpoint Training Center (NTC), an open dorm facility, in retaliation for filing grievances. Plaintiff stated, "Open dorm facilities are very detrimental to my documented mental health issues." He maintained that he lost his prison employment at GRCC as a result of the transfer and that the transfer to an open dorm environment "caused a severe relapse of my mental health issues . . . ." Plaintiff stated, "Such intentional acts of harm are done to prevent those of reasonable firmness of seeking to exercise their First Amendment right of seeking redress of grievances concerning the conditions of their confinement."

Plaintiff maintained that after ten days at NTC he was transferred to LSCC. He asserted, "Th[is] subsequent re-transfer[] ten (10) days after being subjected to an open dorm environment that caused a severe relapse of my mental health issues was done by a very astute and professional psychology department at North Point Center." Plaintiff stated, "Upon arrival at [LSCC] I was immediately faced with extreme hostility and continual harassments. The obstructions, frustrations and impediments concerning an inmates abilities to redress grievances and/or access the courts is the worst I have ever encountered." He maintained that "[m]ost of these obstructions are the design and intentional implementation of C&T Supervisor Alex Ford with the approval of Warden Joseph Meko." Plaintiff stated that he has been denied the use of Lexis Nexis and a typewriter at LSCC. He also represented that "Alex Ford still forces me to allow him to read my legal work with intimidation and aggression. He has also refused to make

legal copies during the scheduled times." Plaintiff stated that the requests for legal copies were made "while litigating a civil action against the DOC . . . ."

Plaintiff also stated that he was subjected to a "strip search/cell search by [non-Defendant] Sgt. Gilliam for filing a very legitimate conflict grievance on his wife, Jennifer Gilliam an employee for the medical provider, Correct Care Solutions . . . with whom I am currently in litigation with." He stated, "The over zealous and abusive search was the talk of the inmate population for days. Fear of such treatment and the threat of worse is the desired effect. Currently almost every inmate around is in awe that I haven't been []shipped to E.K.C.C., this is the common practice by L.S.C.C. staff." Plaintiff also stated that he was sent a memorandum by Meko in which KDOC policies and procedures were "mispresented and implemented to prevent me from filing legitimate grievances on many, many abuses and/or corrupt practices here at L.S.C.C."

In an amendment to the complaint, Plaintiff alleged, "Just as my claim has stated in claim 4:16-cv-00043-JHM[] I have once again been retaliated against by transfer. This time to the DOC's most violent and restrictive institutions as I stated was 'protocol' for inmates seeking to redress grievances concerning the conditions of their confinement." On the same date, Plaintiff filed a notice of change of address indicating that he had been transferred to the Eastern Kentucky Correctional Complex (EKCC).

As relief, Plaintiff sought compensatory and punitive damages and injunctive relief.

Upon initial review of the complaint and amendments pursuant to 28 U.S.C. § 1915A, the Court allowed Plaintiff's claims of retaliation, interference with access to the courts, and interference with legal mail in violation of the First Amendment to proceed against Defendants in their individual and official capacities.

## II.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he has the burden of proof. *Id.* Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. *Id.* If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Where the nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990). The moving party, therefore, is "entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Id.* (internal quotation marks omitted).

## III.

### A. *Retaliatory transfer*

Upon initial review of the complaint and amendments, the Court allowed Plaintiff's retaliation claims to proceed based on allegations that Plaintiff was transferred in retaliation for filing grievances. Plaintiff alleges retaliation based on two transfers.[1] The first was from GRCC to NTC in October 2015. The second was from LSCC to EKCC on May 18, 2016. In their motion for summary judgment, Defendants argue that Plaintiff's retaliatory transfer claims should be dismissed because Plaintiff failed to exhaust his administrative remedies before filing suit as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, *et seq*. They also argue that both of the allegedly retaliatory transfers were made for legitimate penological reasons, and that Plaintiff therefore has failed to demonstrate any adverse effect or a causal connection between his protected activity and the transfers.

The PLRA requires a prisoner to exhaust all available administrative remedies before commencing an action with respect to prison conditions. § 1997e(a). The Supreme Court, interpreting § 1997e, has expressly stated: "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). In order "to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,'—rules that are defined not by the PLRA, but by the prison grievance process itself." *Id*. at 218 (citation omitted) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). "This requirement is a strong one. To further the purposes behind the

---

[1] Defendants maintain that Plaintiff does not claim that the second transfer alleged in the complaint, from NTC to LSCC, was retaliatory, but, as stated by Plaintiff in the complaint, was due to "'very astute and professional psychology department at North Point Training Center.'" Plaintiff does not dispute this in his response. Therefore, the Court finds that Plaintiff is not alleging that the transfer from NTC to LSCC was retaliatory.

PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available . . . even when the state cannot grant the particular relief requested . . . and 'even where [the prisoners] believe the procedure to be ineffectual or futile . . . .'" *Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 222 (6th Cir. 2011) (citations omitted).

To exhaust a claim, a prisoner must proceed through all of the steps of a prison's administrative process. *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). The Supreme Court held in *Woodford v. Ngo*, 548 U.S. at 93, that failure to "properly" exhaust bars suit in federal court. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. To establish that he has exhausted his administrative remedies, a prisoner-plaintiff must have presented his grievance(s) "through one complete round" of the established administrative process. *Thomas v. Woolum*, 337 F.3d 720, 733 (6th Cir. 2003), *overruled in part on other grounds by Woodford v. Ngo*, 548 U.S. at 87. An inmate must demonstrate that he has exhausted all available administrative remedies; when he fails to do so, dismissal of the complaint is appropriate. *See, e.g.*, *Burden v. Price*, 69 F. App'x 675, 676 (6th Cir. 2003).

Defendants argue that for Plaintiff to properly exhaust his claims of retaliatory transfers, he was required to complete the administrative review process "in accordance with the classification appeal process outlined in the Kentucky Corrections Policies and Procedures ("CPP") 18.1." They maintain that Plaintiff failed to do so. Defendants argue that, under CPP 14.6(II)(C)(5), a "Classification decision or appeal of a classification decision including transfer denial, recommendation, or approval" is a non-grievable issue under the standard grievance procedure of CPP 14.6. *See* CPP 14.6 (eff. Aug. 1, 2014). They assert, however, that transfers

6

are classification decisions and are appealable under CPP 18.1(II)(M), which provides an administrative appeal process for classification disputes. *See* CPP 18.1 (eff. July 31, 2015). CPP 18.1(II)(M) provides, in pertinent part:

> M. Appeals
> 1. An inmate may appeal any classification action to the Warden or his designee within five (5) working days of the action. The Warden or his designee shall respond in writing to an appeal of a classification action within fifteen (15) working days of receipt of the appeal. . . .
>
> 2. If the inmate is not satisfied with the response received from the Warden or his designee, the inmate may request in writing to the Director of Population Management or designee that his case be reviewed. This request shall be submitted within five (5) working days of receipt of the Warden's response. The Director of Population Management shall respond in writing within fifteen (15) working days of receipt of the request for review. . . .

Defendants argue that Plaintiff failed to exhaust his administrative remedy with respect to either of the two transfers. They attach the affidavit of Amanda J. Scott, the Corrections Program Administrator for KDOC, who avers that the office of the Adult Classifications Branch, which is where the second level of review of any appeal filed by Plaintiff would have been conducted, has no record of Plaintiff appealing either his transfer from GRCC to NTC in October of 2015 or his transfer from LSCC to EKCC in May of 2016.

In response, Plaintiff maintains that he did properly exhaust his claims. He states that he filed a grievance on October 8, 2015, which he attached to his response to the motion for summary judgment, and it was deemed "non-grievable" under CPP. 14.6(II)(c)(5). Plaintiff states, "In further support that Plaintiff's grievance is non-grievable and does not have an appeal process, Plaintiff draws this Courts attention to Defendant's own 'Exhibit 1' which is CPP 14.6. Under 'non-grievable issues' (c)(5) these matters are not appealable and therefore have been administratively exhausted at that point."

In a similar case before the Eastern District of Kentucky, the inmate plaintiff alleged that KDOC officials transferred him from Kentucky State Penitentiary (KSP) to EKCC "with knowledge that he had previously been threatened at that institution . . . to retaliate against him for filing grievances at KSP[.]" *Hightower v. Thompson*, No. 0:15-93-HRW, 2016 U.S. Dist. LEXIS 132244, at *4 (E.D. Ky. Sept. 27, 2016). The defendants argued that the plaintiff had failed to exhaust his administrative remedies under CPP 18.1(II)(M), the same provision on which Defendants rely in the instant motion. *Id.* at *8. In that case, the court found that "[w]hile acknowledging that CPP 14.6(II)(C)(5) states that classification decisions are not grievable under CPP 14.6's general grievance procedure applicable to most inmate complaints, the defendants explain that CPP 18.1(II)(M) provides a separate appeal procedure for classification decisions, one Hightower admits that he did not pursue." The Eastern District of Kentucky found that, "[M]ost inmate grievances regarding prison life must be grieved following the procedure set forth in CPP 14.6, unless they are either specifically identified as 'non-grievable' matters or a provision like CPP 18.1 provides an independent appeal and review mechanism." Finding that the plaintiff had failed to exhaust his retaliatory transfer claim under CPP 18.1(II)(M), the court granted summary judgment in the defendants' favor.

On a motion for summary judgment on failure to exhaust grounds, a defendant carries the initial burden of establishing that a prisoner failed to exhaust administrative remedies. *Hill v. Rubowsky*, No. 4:12CV00229, 2014 U.S. Dist. LEXIS 25220, at *12-13 (N.D. Ohio Feb. 27, 2014) (citing *Jones v. Bock*, 549 U.S. at 216). "'Once the defense meets its burden, the burden shifts to the plaintiff to show that the administrative remedies were unavailable.'" *Id*. (quoting *Jones v. Bock*, 549 U.S. at 216); *see also Celetox*, 477 U.S. at 323; *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011) ("Once a defendant proves that a plaintiff failed to exhaust,

however, the onus falls on the plaintiff to show that remedies were unavailable to him as a result of intimidation by prison officials.").

Defendants have presented the KDOC policy, CPP 18.1(II)(M), as evidence of an administrative remedy available to Plaintiff which required him to appeal the transfer decisions to the Warden within five days and, if unsatisfied with the Warden's decision, to request in writing to the Director of Population Management that his case be reviewed. The Court finds that Defendants have met their burden of establishing that Plaintiff failed to exhaust his available administrative remedies on his transfer claims. In response, Plaintiff implicitly concedes that he did not avail himself of this procedure. While he maintains that he filed a grievance under CPP 14.6, which was rejected as a "non-grievable" issue, Plaintiff does not maintain that the procedure under CPP 18.1(II)(M) was unavailable to him or that Defendants engaged in any conduct to impede his access to this procedure. Following the Eastern District of Kentucky's decision in its case on point, the Court finds that Plaintiff has failed to establish a genuine issue of material fact with regard to exhaustion and that the motion for summary judgment on the retaliatory transfer claims must be granted. Because the Court will grant summary judgment on this basis, the Court declines to address Defendants' other arguments concerning Plaintiff's retaliatory transfer claims.

### B. *Retaliatory strip search and cell search*

Upon initial review of the complaint under § 1915A, the Court also allowed Plaintiff's retaliation claim to proceed based on his allegation that he was subjected to a "strip search/cell search by [non-Defendant] Sgt. Gilliam for filing a very legitimate conflict grievance on his wife, Jennifer Gilliam an employee for the medical provider, Correct Care Solutions . . . with whom I am currently in litigation with." Defendants argue that this claim also must be dismissed

9

because Plaintiff failed to exhaust his administrative remedies regarding this claim. They maintain that Plaintiff implicitly concedes the fact in the complaint since he does not identify a grievance number in connection with this claim while he did so for other allegations in the complaint. In his response to the motion for summary judgment, Plaintiff does not address Defendants' argument. He does not point to a grievance or make any argument that the grievance process was unavailable to him with respect to this claim.

However, even if Plaintiff had exhausted his administrative remedies with respect to this claim, he does not name Gilliam as a Defendant to this action. The Court, therefore, concludes that Plaintiff alleges this claim against Defendant Erwin, the KDOC Deputy Commissioner, or Defendant Meko, the LSCC Warden, based on their roles as supervisors of Gilliam. However, as Defendants correctly maintain, the doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Rather, to establish supervisory liability in a § 1983 action, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy*, 729 F.2d at 421 (citing *Hays v. Jefferson Cty., Ky.*, 668 F.2d 869, 872-74 (6th Cir. 1982)). "[L]iability of supervisory personnel must be based on more than merely the right to control employees." *Hays*, 668 F.2d at 872. "Likewise, simple awareness of employees' misconduct does not lead to supervisor liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003) (citing *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)). Supervisory liability "must be based on active unconstitutional behavior and cannot be based

upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)).

Here, Plaintiff fails to demonstrate that either Defendant Erwin or Meko, or any of the other Defendants, directly participated in the alleged retaliatory strip search and cell search. Plaintiff's allegations, apparently based on Defendants Erwin's and/or Meko's supervisory authority or failure to act, are insufficient to give rise to a constitutional violation under § 1983. Therefore, the Court will grant summary judgment on this claim.

### C. Interference with access to the courts and legal mail

Upon initial review, the Court also allowed Plaintiff's claims of interference with access to the courts and interference with legal mail to proceed for further development based on Plaintiff's claims that he was denied access to Lexis Nexis and the use of typewriter in the LSCC library. Plaintiff also alleged that "Alex Ford still forces me to allow him to read my legal work with intimidation and aggression. He has also refused to make legal copies during the scheduled times." Plaintiff maintained in the complaint, "The refusal to make legal copies while litigating a civil action against the DOC has nothing what so ever to do with the use of the legal data base and/or the use of the typewriters paid for by the tax payers. Yet, this is common subterfuge used here at L.S.C.C." He continued, "Only here at L.S.C.C. does this extreme type of obstruction, frustration and impediment exist when redressing grievances or attempting to access the courts. Many such confidentiality of legal material have also occurred with excessive hostile aggression by C&T Supervisor Alex Ford on 12-28-15, 2-19-16, 3-3-16 and present."

Defendants moved for summary judgment on grounds that Plaintiff failed to identify any specific harm or prejudice resulting from the actions which he claims denied him access to the

courts or interfered with his legal mail. They also argue that the actions of Defendant Ford were taken to enforce LSCC's policies.

In his response, Plaintiff addresses Defendants' arguments related to his interference claims as follows:

> Mr. Ford in his affidavit further states, '. . . staff librarian would at times verify what an inmate was working on[.]' [Ellipses by Plaintiff.] While in fact, Jasmyne-Lewis Combs never at any time did this. Yet, Alex Ford would literally snatch the paper out of the typewriter in mid-sentence without warning. This occured on 12/28/15, 2/19/16 & 3/3/16 and the previous requested video footage would have clearly revealed this. The vital requested depositions of various staff and inmates will also support this.[2] Since the policies set forth at L.S.C.C. are themselves obstructive, intrusive and denying pro-se litigants the confidentiality as counsel of the record demands, how can the Courts not grant the requested injunctive relief to change this practice that denies the unimpeded access to the Lexus Nexus Legal Data base. Only at L.S.C.C. and L.S.C.C. does this unconstitutional policy exist.

In addition, regarding this claim, Plaintiff states, "While Mr. Thompson provides confidential, unobstructed access to the Lexus Nexus Legal data base at EKCC, Haun was unable to pursue vital litigation of which the Plaintiff contends was the desired affect." Plaintiff also maintains, "The [Plaintiff's] assertion that Alex Ford's 'reading of his legal material' was not only arbitrary and capricious but violently aggressive. Obstacles that impair the ability to present ones case effectively are actionable."

Prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The right of access to the courts, however, is not equated with unlimited access to legal materials and assistance. *See Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). In order to state a claim for interference with access to the courts, a plaintiff must show actual

---

[2] In his response to the motion for summary judgment, Plaintiff states, "[]a Court should not grant summary judgment against a party who has not had ample time to pursue discovery or whose discovery requests have not been answered." However, Plaintiff does not identify any discovery requests that are outstanding. He previously filed a motion to compel discovery (DN 25) and a motion to compel Defendants "to arrange for depositions telephonically" (DN 41). Upon consideration of both motions, the Court denied them (DNs 39 and 54). Therefore, the Court concludes that Plaintiff has had ample time to conduct discovery and that there are no outstanding discovery requests.

injury. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (per curiam). "[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. That would be the precise analog of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). "[M]eaningful access to the courts is the touchstone, and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id*. (internal quotation marks omitted) (citations omitted). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005) (citation omitted).

In this case, Plaintiff has neither pleaded nor presented evidence of actual prejudice towards him in any litigation. Plaintiff states in his response that he "was unable to pursue vital litigation . . . ." However, he has not identified what litigation he was actually prevented from pursuing or alleged that he was prevented from filing any complaint or motion or from meeting a court-imposed deadline. While Plaintiff claims that he was denied access to Lexis Nexis, typewriters, and photocopies, his claim must be based on an actual denial of access to courts rather than denial of access to legal materials. *See Childs v. Pellegrin*, 822 F.2d 1382, 1385 (6th Cir. 1987). Even assuming Plaintiff could prove that Defendant Ford engaged in the conduct alleged, Plaintiff must show actual prejudice, and he has failed to do so. Therefore, summary judgment must be granted on Plaintiff's claims of interference with access to courts and legal mail. *See, e.g.*, *Armstrong v. Brunsman*, No. 10-4197, 2011 U.S. App. LEXIS 26489, at *3-4 (6th Cir. Oct. 27, 2011) (dismissing denial-of-access-to-courts claim based upon allegations that

13

plaintiff's legal property had been taken by prison officials because the plaintiff "failed to plead and prove prejudice"); *Weddle v. Dunbar*, No. 1:15-CV-00009-GNS, 2016 U.S. Dist. LEXIS 45693, at *7 (W.D. Ky. Apr. 5, 2016) (granting summary judgment on the basis that "[e]ven assuming Weddle could prove Dunbar confiscated his legal materials . . . , Weddle must show actual prejudice and he is unable to do so") (citing *Rutter*, 420 F.3d at 578); *Sprinkle v. Barksdale*, No. 7:08CV00430, 2009 U.S. Dist. LEXIS 57416, at *19-20 (W.D. Va. July 6, 2009) (dismissing access-to-courts claim based upon allegation that a prison official kept copies of court documents because the plaintiff did not explain how this action caused any injury to his litigation efforts).

Moreover, to the extent Plaintiff refers in his response to requesting injunctive relief "to change this practice that denies the unimpeded access to the Lexus Nexus Legal Data base" at LSCC, he is no longer housed there. An inmate's claim for injunctive relief regarding the conditions of his confinement becomes moot upon the inmate's release from confinement or transfer to another facility. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (finding inmate's request for injunctive relief moot as he was no longer confined to the institution where the alleged wrongdoing occurred). Therefore, Plaintiff is not entitled to injunctive relief concerning access to legal materials at LSCC.

Further, the Court allowed a claim of interference with legal mail to proceed upon initial review based on Plaintiff's allegation that "Alex Ford still forces me to allow him to read my legal work with intimidation and aggression." However, upon review of the complaint and the response to the motion for summary judgment, the Court finds that Plaintiff does not allege that his legal mail was hindered in any fashion. Therefore, the Court construes Plaintiff's statements

as alleging interference with access to the courts and will dismiss any claims of interference with legal mail.

### D. Grievance handling

While the Court did not specifically address Plaintiff's allegations concerning the handling of his grievances on initial review, Defendants argued in the motion for summary judgment that Plaintiff's allegations concerning his grievances must also be dismissed. Plaintiff stated in the complaint that the grievance system "is completely inept here @ L.S.C.C." He further stated as follows:

> The time limit(s), order of grievnces filed and/or being heard, the many erroniously misuse and/or misinterpreted implementation of CPP 14.6 to reject and/or violate due process is the norm. Most legitimate grievances remain unresolved even when the inmate has agreed to his satisfaction with a said recommendation because that resolution is never enforced. As is the case with the (known) (37) thirty-seven grievances filed against the food service provider Aramark since last May, May 2015. When filing a grievance that has personal staff involvement(s), immediate retaliation should be expected.

Plaintiff also maintained that Defendant Meko had prevented him "from filing legitimate grievances on many, many abuses and/or corrupt practices here at L.S.C.C. The Warden himself is currently in violation of CPP 14.6 on page 12 section 3.b in regards to several griences on time limits of (15) fifteen days . . . ."

Defendants correctly argue that there is "no constitutionally protected due process interest in unfettered access to a prison grievance procedure." *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005). By the same token, a plaintiff cannot maintain a claim against a prison official based solely on his or her denial of the plaintiff's grievance. "The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d at 300). "The mere denial of a prisoner's grievance states

no claim of constitutional dimension." *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003). A plaintiff's claim is against the subjects of his or her grievances, not those who merely decided whether to grant or deny the grievances. *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) ("Skinner's complaint regarding Wolfenbarger's denial of Skinner's grievance appeal, it is clear, fails to state a claim."); *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."); *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) (same); *Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003) ("[T]he denial of an appeal cannot in itself constitute sufficient personal involvement to state a claim for a constitutional violation.").

Therefore, to the extent Plaintiff alleges separate claims based on the handling of his grievances or placement on grievance restriction, the claims are subject to dismissal for failure to state a claim upon which relief may be granted.

## IV.

For the reasons stated above, **IT IS ORDERED** that Defendants' motion for summary judgment (DN 49) is **GRANTED**. The Court will enter a separate Judgment dismissing the action.

Date: March 13, 2018

Joseph H. McKinley, Jr., Chief Judge
United States District Court

cc: Plaintiff, *pro se*
    Counsel of record
4414.010